[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12403

_____

D. C. Docket No. 02-21642-CV-KAM

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 05, 2006
THOMAS K. KAHN
CLERK

JEFFREY D. KAMLET,

Plaintiff-Appellee
Cross-Appellant,

versus

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

Defendant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 5, 2006)**

Before TJOFLAT, ANDERSON and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Jeffrey Kamlet, a participant in an employee benefit plan sponsored

by his employer, brought this action against defendant Hartford Life and Accident

Insurance Company, for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq. Following a bench trial, the district court awarded Kamlet $ 31,008.45, consisting of benefits and prejudgment interest. Hartford appealed that judgment to the Eleventh Circuit, which affirmed the district court. Kamlet then filed a petition for attorneys' fees, seeking $127,184.50 in fees and $1,825.85 in taxable costs. The district court awarded Kamlet $87,241.40 in attorneys' fees and $1,575.85 in costs.

Hartford now appeals this award of attorneys' fees. Kamlet cross-appeals, asserting that the district court erred when it calculated his attorneys' fees at historical, rather than current rates.

## I. BACKGROUND

In 1995, Kamlet applied for long-term disability benefits from Hartford. Kamlet began receiving monthly payments in July 1995. Between 1996 and 2000, Hartford made a series of deductions from Kamlet's benefits to adjust for income he earned from part-time employment. The amount of these deductions was $25,700. Kamlet disagreed with these deductions and, in November 2000, he hired an attorney to represent him in his discussions with Hartford regarding the disagreement. After some negotiation, Hartford agreed to calculate the benefits in the manner sought by Kamlet, and to make the calculation retroactive. Kamlet

2

offered to settle the claim for the benefit amount, plus $16,000 in attorneys' fees he had incurred in the negotiations. Hartford refused to pay the attorneys' fees.

Kamlet then sued Hartford in federal court, asserting claims for the benefits and attorneys' fees. Hartford defended itself on the merits, arguing that its deductions were valid. The trial court ruled for Kamlet on the deductions issue and awarded Kamlet the benefits he sought.

Hartford argues that Kamlet should not be rewarded with almost $90,000 in attorneys' fees when he refused to settle a $25,000 benefits dispute. Hartford argues that ERISA is clear that pre-litigation attorneys' fees are not recoverable and that this rule encourages settlement. Hartford argues that Kamlet's sole purpose in filing his lawsuit was to seek fees to which he had no right. Hartford seems to make two arguments: 1) Kamlet is not entitled to pursue attorneys' fees because he forced the litigation by pursuing non-recoverable pre-litigation fees and refusing Hartford's offer of full benefits; and 2) even if Kamlet can pursue attorneys' fees, the district court abused its discretion in awarding them in this case because it misapplied this Circuit's five-factor test for awarding attorneys' fees.

## II. STANDARD OF REVIEW

We review the district court's award of attorneys' fees for abuse of discretion. Sierra Club v. Hankinson, 351 F.3d 1358, 1361 (11th Cir. 2003).

3

## III. ANALYSIS

### A. Kamlet's Pursuit of Pre-Litigation Attorneys' Fees

Hartford asserts that Kamlet's bad faith conduct is a sufficient basis for reversing the district court's award of attorneys' fees. Hartford asserts that in these circumstances, the court need not even consider the usual five-factor test for awarding attorneys' fees. Hartford argues that Kamlet should not be rewarded with almost $90,000 in attorneys' fees when he refused to settle a $25,000 benefits dispute. Hartford argues that ERISA is clear that pre-litigation attorneys' fees are not recoverable and that this rule encourages settlement. Hartford argues that Kamlet's sole purpose in filing his lawsuit was to seek fees to which he had no right.[1]

As the district court pointed out, Hartford's problems could have been avoided if Hartford actually had tendered the benefits it claimed it was willing to pay Kamlet. Hartford could have given the money to Kamlet, or deposited it in a court escrow fund. At that point, the litigation would have consisted solely of Kamlet's claims for pre-litigation attorneys' fees. Instead, Hartford opted to litigate the entire case. Hartford did not pay Kamlet his benefits; rather, in court, Hartford

---

[1] We cannot conclude that the district court was clearly erroneous in finding that Kamlet did not act in bad faith in requesting attorneys' fees during the administrative proceedings.

4

argued that it owed Kamlet no additional benefits at all. Hartford fought Kamlet's action on all fronts, as it was certainly entitled to do. Hartford, however, cannot seek refuge in a claim that it would have paid all the benefits up front. Hartford did not do this; in court, Hartford challenged Kamlet's right to any additional benefits. If Hartford had won, it would have paid no benefits to Kamlet. Hartford cannot hide from the potential negative consequences of this full litigation by asserting it was willing to pay the benefits before litigation commenced. Hartford could have conceded the benefits issue but, instead, pursued full litigation. Again, Hartford was entitled to pursue full adjudication of all issues, but it must accept the risks of that litigation, which include the attorneys' fees provisions of ERISA.

In this respect, Hartford's reliance on Anderson v. Procter & Gamble Co., 220 F.3d 449 (6th Cir. 2000) is misplaced. In Anderson, the plaintiff and her plan had a dispute about benefits, but then reached an agreement. The plaintiff then sued in federal court for attorneys' fees. The Sixth Circuit held that the plaintiff could not recover attorneys' fees for services in the administrative proceedings. In Anderson, however, the only issue was the attorneys' fees. The merits of plaintiff's benefit claim were not litigated. In the instant case, Hartford asserted before the court that it had no obligation to pay Kamlet additional benefits. Full litigation of Kamlet's claim ensued. After this full litigation, the district court determined that

Kamlet's litigation expenses should be covered by Hartford. Hartford could have availed itself of the <u>Anderson</u> position by settling Kamlet's benefit claim and then addressing only the issue of attorneys' fees in court. Hartford, however, is attempting to create a win-win situation. If it had prevailed on the merits, it would have paid Kamlet no benefits. However, having lost on the merits, Hartford now wishes to insulate itself from paying Kamlet's litigation-based attorneys' fees by following <u>Anderson</u>. Hartford, however, did not make the same commitment to a position (paying benefits) that the defendant in <u>Anderson</u> did. Hartford quotes the Anderson court's statement that "no court has ever held that a plaintiff who settles all of her ERISA claims at the administrative stage and files suit only to recover costs is permitted to recover attorneys' fees under § 1132(g)." <u>Id.</u> at 455. In this case, however, the parties did not settle the claims at the administrative phase and Hartford continued to dispute the benefits.

Accordingly, we conclude that Hartford's initial offer to settle Kamlet's benefit claim did not bar Kamlet from pursuing attorneys' fees after he litigated the full claim in court.

B. The Guidelines for Exercising Discretion to Award Attorneys' Fees

Hartford also asserts that the district court abused its discretion in awarding

fees under this Circuit's guidelines for awarding attorneys' fees. In awarding fees, a court considers such factors as: 1) the degree of the opposing party's bad faith or culpability; 2) the ability of the opposing party to satisfy an award of attorneys' fees; 3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; 4) whether the party requesting attorneys' fees sought to benefit all beneficiaries and participants of an ERISA plan or to resolve a significant legal question involving ERISA itself; and 5) the relative merits of the parties' positions. Dixon v. Seafarers' Welfare Plan, 878 F.2d 1411, 1412 (11th Cir. 1989). Hartford challenges the district court's findings on the first and third factor.

The first consideration is whether Hartford acted in bad faith in defending its position in Kamlet's lawsuit. Hartford argues that this first factor is the most important. That may be true, but we have squarely rejected the argument that the absence of bad faith is dispositive and requires denial of attorneys' fees. Wright v. Hanna Steel Corp., 270 F.3d 1336, 1345 (11th Cir. 2001). Although the district court found that Hartford may not have acted in bad faith, the district court found that Hartford was "more culpable" than Kamlet. We cannot conclude that this finding of fact by the district court is clearly erroneous. And there is ample support in the record to support the district court's finding of greater culpability on the part

7

of Hartford. Hartford's position on the merits was pretty clearly inconsistent with the provisions of the summary plan description.

The third factor, deterrence, is intertwined in the issue of bad faith/culpability. To the extent that Hartford is more culpable for adopting its position on the merits, then an award of attorneys' fees may deter these types of actions. At the very least, we disagree with Hartford that it is behavior like Kamlet's that should be deterred. Until Hartford actually paid Kamlet his benefits, Kamlet was justified in suing for those benefits.

On the other factors, the district court found that two favored Kamlet, while one did not. The district court found that Hartford had the ability to satisfy an award of attorneys' fees. Kamlet also benefits from the consideration of the relative merits of the parties' positions. As the district court noted, it ruled in Kamlet's favor on the merits. We agree that Kamlet had the stronger position in the litigation. The remaining factor does not favor Kamlet, as he was not seeking to benefit all beneficiaries or participants in an ERISA plan.

Based on our consideration of all five factors, we conclude that the district court did not abuse its discretion in awarding attorneys' fees to Kamlet for the litigation.

C. Kamlet's Cross-Appeal

The district court awarded Kamlet attorneys' fees based on the rates billed, rather than current rates. The district court believed that the attorneys' fees, as billed, adequately compensated Kamlet. We cannot conclude that the district court abused its discretion in this case.

**AFFIRMED.**[2]

---

[2] Hartford's request for oral argument is DENIED.